IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

| | | |
|---|---|---|
| 1) TRISURA SPECIALTY INSURANCE COMPANY, an Oklahoma corporation; and 2) TRISURA INSURANCE COMPANY, an Oklahoma corporation, | ) ) ) ) | **FILED IN DISTRICT COURT OKLAHOMA COUNTY** |
| Plaintiffs, | ) ) | DEC 11 2024 |
| vs. | ) ) | **RICK WARREN COURT CLERK** |
| 1) ORION 180 INSURANCE SERVICES, LLC, a limited liability company; 2) ORION 180 GROUP Inc., a foreign corporation; 3) ORION 180 INSURANCE COMPANY, a foreign corporation; and 4) KEN GREGG, an individual, | ) ) ) ) ) ) ) | Case No. 128_____ **CJ - 2024 - 7 9 2 6** |
| Defendants. | ) ) | |

## PETITION

COME NOW TRISURA SPECIALTY INSURANCE COMPANY and TRISURA INSURANCE COMPANY, hereinafter referred to as "Trisura" or "Plaintiff," and for its causes of action against Orion 180 Insurance Services, LLC., Orion 180 Insurance Company, Orion 180 Ltd., Orion 180 Group Ltd., (collectively referred to as "Defendant Orion") and Defendant Ken Gregg ("Defendant Gregg") (Defendant Orion and Defendant Gregg are collectively referred to as "Defendants"), alleges and states as follows:

1.     Trisura Specialty Insurance Company and Trisura Insurance Company are and were at all times pertinent to this action Oklahoma insurance companies with their principal place of business in Oklahoma.

2.     Defendant Orion 180 Insurance Services LLC ("Orion 180") is and was at all times pertinent to this action a foreign limited liability company with its principal place of business in the State of Florida.

**EXHIBIT**

**1**

3. Defendant Orion 180 Group, Inc. ("Defendant Orion 180 Group") is and was at all times pertinent to this action a foreign corporation with its principal place of business in the State of Florida.

4. Defendant Orion 180 Insurance Company ("Orion 180 Insurance") is and was at all times pertinent to this action a foreign corporation with its principal place of business in the State of Indiana.

5. On information and belief, Defendant Gregg is 75% owner of Defendant Orion 180 Group.

6. On information and belief, Defendant Orion 180 Group is the parent company of the other Orion defendants.

7. Defendant Gregg is and was at all times pertinent to this action an individual and resident of the State of Florida.

8. Defendant Gregg is a licensed insurance producer and formed Defendant Orion.

9. At all times pertinent to this Action, Defendant Gregg acted on his own behalf individually and as a representative of Defendant Orion.

10. When communicating with Trisura, Defendant Gregg usually did not identify whether the communication was made in his individual capacity or as a representative of a specific Orion 180 entity.

11. Since Defendant Gregg did not identify who he was speaking on behalf of in any particular communication, Trisura assumed he was acting in his individual capacity and as a representative of Defendant Orion.

12. Plaintiff and Defendant Orion 180 entered into a Program Administrator Agreement ("Agreement" or "PAA") on April 15, 2019.

13. Defendant Gregg entered into the PAA on behalf of Defendant Orion 180.

2

14. Under the PAA, the business underwritten by Defendant Orion 180 was generally described as Homeowners business. The Homeowners business included coastal homeowners' insurance in the states of North Carolina, South Carolina, Alabama and Mississippi.

15. Defendant Orion 180 produced, administered and underwrote the homeowners' insurance under the PAA (the "Program").

16. Defendant Orion 180 had an implied duty of good faith and fair dealing under the PAA which required it to act in good faith.

17. In addition, as an insurance agent, Defendant Orion 180 owed Trisura the duty of loyalty, fairness and honesty, and had a duty to act in good faith, to keep Trisura informed of material matters that relate to the insurance or to the agency/company relationship, to carry out Trisura's instructions faithfully and diligently, and to act in the exercise of due care and confine its actions to the scope of the agent's delegated authority.

18. The PAA provides in Article 9.01 that it was made and entered into in the State of Oklahoma, is governed by Oklahoma law, and that all disputes under the contract are exclusively under the jurisdiction and venue of Oklahoma courts and that the parties "waive any objections to the jurisdiction and venue of such courts."

19. Jurisdiction and venue are proper herein. Defendants have consented to, and waived any objections to, such jurisdiction and venue as agreed to under the PAA.

20. The PAA provides, in pertinent part, that:

    a.    1.02 Strict Compliance. "All activities of the Program Administrator pursuant to this Agreement shall be in strict compliance with the terms of this Agreement, the Lead Reinsurance Agreement and all rules, regulations and instructions of the Company,...." (emphasis added)

    b.    5.02 Maintenance and Examination of Records. "All Records, as defined in Article 12 pertaining to this Agreement, of the Program Administrator and any sub-agent or sub-broker pertaining to the Company's business shall, at all times, be open to examination by any authorized representative of the Company. The Program Administrator shall make copies of Records

3

available upon request by the Company, whether the request is before or after termination of this Agreement. . . ."

c.    5.06 Company Property. "…Upon request of the Company, prior to or after the termination of this Agreement, the Program Administrator shall provide to or as directed by the Company, at the Program Administrator's sole cost and expense, electronic copies of any and all Records related to the reinsured business in a format specified by the Company…."

d.    5.08 "…Any electronic records maintained by the Program Administrator requested or required by the Company, shall be provided within five (5) business days or less, if so requested by the Company…."

21.    Defendants knew that a critical requirement for the viability of the Program was the purchase of adequate catastrophe reinsurance ("CAT Cover"). It was agreed between the parties that such CAT Cover would be purchased with funds generated from the Program.

22.    In 2021, Defendant Gregg informed Trisura that he was forming a new insurance company, Defendant Orion 180 Insurance, that would replace Trisura and insure the properties that were or would be covered under the Program.

23.    Trisura was advised by Defendant Gregg that the Program would ultimately move to Orion 180 Insurance but requested that Trisura continue the Program in the interim with the understanding that Trisura would continue to earn fronting fees.

24.    Defendant Gregg informed Trisura, and all parties agreed, that Orion 180 Insurance would replace Trisura as the issuing carrier on the Program. Thereafter, all new policies written were to be on Orion 180 Insurance paper only.

25.    Defendant Gregg also informed Trisura and all parties agreed that, with respect to the policies written on Trisura paper in the interim, the risk would be transferred to Orion 180 Insurance by novation or otherwise transferred from Trisura to the Orion Defendants through an acceptable risk transfer. Accordingly, after the novation and transfer was complete, Trisura would be "off risk" for those policies.

4

26.     From the time Defendant Gregg started Orion 180 Insurance until it was up and running and could replace Trisura as the issuing carrier, it was critical for Defendants that the Program and PAA continue uninterrupted. If this did not occur, Defendants would lose their entire distribution network, with all the policyholders and their agents looking elsewhere for insurance. Accordingly, there was a substantial risk of the business failing if the transition from Trisura to Orion 180 Insurance was not seamless.

27.     In addition, Defendants would lose tens of millions of dollars in commission income if the PAA was terminated, which supported their entire organization and upon which Defendant Gregg based his financial projections to raise capital for Orion 180 Insurance. Defendants would also lose future commissions in subsequent years for those policyholders and agents who went elsewhere for their insurance needs.

28.     As a direct result of Defendants' promises that Orion 180 Insurance would be the issuing carrier for the new policies and assume the existing policies, Trisura agreed to continue the PAA and the Program, which Trisura would not have done otherwise.

29.     Because of these representations and agreements, upon which Trisura's decision to continue the PAA and Program was based, Defendants were able to continue writing new policies, reaping the benefits of substantial commissions and other compensation on such policies. During this time frame, Defendants continued to consistently represent and promise that Orion 180 Insurance would replace Trisura as the issuing carrier on the Program and novate or otherwise assume existing policies.

30.     Simultaneously, and to continue the Program and PAA, CAT Cover had to be purchased. Based on Defendants' representations and information, and with Defendants' full knowledge, CAT Cover was purchased for the Program.

31.     Unfortunately for Defendants, the Program became less profitable for them than they had anticipated. However, in order to keep the Program and PAA in place Defendants

5

continued to promise and represent to Trisura that they would issue new policies on Orion 180 Insurance paper and/or novate the policies.

32. To protect themselves against this unexpected downturn, Defendants ultimately refused to write new policies on its paper or novate the policies and take Trisura off-risk. Further, Defendants refused to bear the additional costs associated with the CAT Cover. This left Trisura exposed to the policies and forced Trisura to use funds to purchase the CAT Cover, which by this point had become significantly more expensive. In other words, Defendants breached their contractual obligations and broke their promises to Trisura in order to protect their own profitability, all at Trisura's expense.

33. Defendants induced Trisura to keep the Program and PAA running in order to garner more time to set up their new business and have a seamless, uninterrupted transition. However, when the policies and Program became less profitable and CAT Cover costs increased, Defendants refused to write new policies on Orion 180 Insurance paper or novate the policies. In short, Defendants refused to put the policies on Defendants' balance sheet as promised, causing financial loss and damage to Trisura.

34. Without Defendants' representations and agreements, and had Trisura known that Defendants would not honor their obligations, Trisura would have terminated the PAA and put the Program into runoff. Had Trisura discontinued the Program, Defendants would have lost tens of millions of dollars, and Trisura would have saved tens of millions of dollars.

35. After Defendants refused to honor their promises, Trisura terminated the PAA pursuant to its terms and conditions and instructed Defendants not to write any new business.

36. Trisura then instructed Defendants to cancel any and all policies where permitted by the policy language and applicable law in an effort to mitigate Trisura's damages which were caused by Defendants.

6

#22078913.2

37.    Despite being Trisura's agent and servicing policies written by Trisura, Defendants refused to cancel policies where permitted by the policy language and applicable law.

38.    In addition to breaching the PAA by ignoring Trisura's instructions, Defendants furthered their own interests by retaining compensation for such policies, continuing the Program uninterrupted, and retaining as many policyholders as possible for themselves and their new venture.

39.    In order to cancel the policies where allowed by law and complete the runoff of the Program, on February 24, 2023, Trisura demanded that Defendants provide it with:

    a.    The COL premium by policy through February 24, 2023, on all in force policies;

    b.    Agent name and address for all in force policies, and

    c.    Mortgagee name and address for all in-force policies.

40.    Pursuant to Article 5 of the PAA, which survived termination, Defendants were required to provide Trisura with this requested information.

41.    In addition to Trisura, the Oklahoma Insurance Department also demanded that Defendants provide the requested information to Trisura.

42.    Despite their clear obligations under the PAA and the demands by both Trisura and the Oklahoma Insurance Department, Defendants refused to provide Trisura with the information requested, which prevented Trisura from cancelling the policies itself and mitigating its losses.

**FIRST CAUSE OF ACTION**
**(Against All Defendants)**

**BREACH OF IMPLIED OR ORAL CONTRACT,**
**RATIFICATION AND ADOPTION**

43.    Plaintiff hereby adopts and incorporates by reference herein all allegations contained in the foregoing Paragraphs as though fully set forth herein.

#22078913.2

44.     Defendants represented to Trisura and agreed that Orion 180 Insurance would issue new policies on Orion 180 Insurance paper and assume or novate in-force policies.

45.     In consideration of Defendants' promises and agreement, Trisura agreed to continue the PAA and the Program.

46.     Orion 180 Insurance did not issue new policies, refused to assume the existing policies, and the risk was not transferred from Trisura to Orion 180 Insurance as Defendants had represented and promised.

47.     Defendants had full knowledge that they did not intend to honor their promises and representations as made to Trisura, yet they continued to voluntarily accept the benefits accruing to them by having the Program and PAA remain in place. These benefits included, but were not limited to, receiving millions of dollars in commission payments and compensation.

48.     Defendants, as a result of their actions and conduct, consented to all obligations arising from the acceptance of those benefits, are estopped from denying that any such agreement or contract was made and have adopted or ratified it. At a minimum, Defendants' ratification or adoption can be implied from Defendants' acts, conduct, and acceptance of these benefits.

49.     Defendants' actions and conduct as set forth herein constitute a breach of implied or oral contract under Oklahoma law.

50.     Defendants' actions in breaching the implied or oral contract have caused significant financial damages to Trisura, which Trisura is entitled to recover.

**SECOND CAUSE OF ACTION**
**(Against All Defendants)**

**PROMISSORY ESTOPPEL, DETRIMENTAL RELIANCE, AND UNJUST ENRICHMENT**

51.     Plaintiff hereby adopts and incorporates by reference herein all allegations contained in the foregoing Paragraphs as though fully set forth herein.

8

#22078913.2

52. Defendants represented to Trisura that Orion 180 Insurance would write new policies and assume in-force policies. Those representations turned out to be false.

53. Defendants' misrepresentations were material in that they induced and caused Trisura to change its position and continue the Program and PAA, which Trisura would not have done otherwise.

54. Trisura reasonably relied on Defendants' representations and agreed to continue the PAA and Program.

55. Additionally, the purchase of CAT Cover was necessary to continue the Program and the PAA, and Trisura reasonably relied on Defendants' representations in continuing the PAA and Program and in purchasing CAT Cover. Defendants, therefore, further induced Trisura into maintaining the Program while Defendants set up their new business and then failed to pay for the additional CAT Cover, which Trisura had to purchase.

56. Defendants made, and continued to make, material misrepresentations as described above which they knew to be false at the time they were made. Additionally, Defendants made these misrepresentations and promises with the specific intent and purpose of having Trisura rely on them and change its position regarding the continuation of the Program and PAA.

57. Trisura incurred damages by reasonably relying to its detriment on the Defendants' misrepresentations, promises, actions, and conduct. In other words, a detriment was suffered by Trisura in relying on the Defendants' promises, and that detriment is ample consideration to enforce the Defendants' promises.

58. Defendants were also unjustly enriched by the benefits they received in having the Program and PAA remain in place. These benefits included, but were not limited to, receiving millions of dollars in commission payments and compensation.

9

#22078913.2

59.    As a result of Defendants' actions, conduct, representations and promises, and Trisura's detrimental and reasonable reliance on them, Defendants were unjustly enriched, and Trisura suffered significant financial damages, which it is entitled to recover.

## THIRD CAUSE OF ACTION
### (Against Orion 180)

### BREACH OF CONTRACT

60.    Plaintiff hereby adopts and incorporates by reference herein all allegations contained in the foregoing Paragraphs as though fully set forth herein.

61.    Pursuant to paragraphs 1.02, 5.02, 5.06 and 5.08 of the PAA, Defendant Orion 180 was required to provide Trisura with the information requested in Trisura's February 24, 2023, correspondence.

62.    Pursuant to paragraph 1.02 of the PAA, Defendant Orion 180 was required to comply with the instructions of Trisura, including its request that Defendant Orion 180 cancel all policies where permitted by the policy language and applicable law.

63.    Defendant Orion 180 breached the PAA by failing to provide necessary information requested by Trisura and failing to cancel the policies where appropriate.

64.    Defendant Orion 180 further failed to act in good faith with Trisura and breached its duty of good faith and fair dealing under the PAA.

65.    Defendant Orion 180's actions as set forth herein constitute a breach of contract, either express or implied, under Oklahoma law.

66.    In addition, as an insurance agent, Defendant Orion 180 owed Trisura the duty of loyalty, fairness and honesty, and had a duty to act in good faith, to keep Trisura informed of material matters that relate to the insurance or to the agency/company relationship, to carry out Trisura's instructions faithfully and diligently, and to act in the exercise of due care and confine

10

#22078913.2

its actions to the scope of the agent's delegated authority. Defendant Orion 180 breached all of these duties by its conduct and actions as described herein.

67.     Defendant Orion 180's actions in breaching the PAA and its duties have caused significant financial damages to Trisura, which Trisura is entitled to recover.

**WHEREFORE**, Plaintiff respectfully requests the entry of judgment in its favor and against Defendants, as follows:

A.     An award of compensatory damages in an amount to be proven at trial, but which includes actual damages in excess of $75,000.00;

B.     An award of all costs incurred in connection with the prosecution of this action;

C.     A reasonable attorney's fee; and

D.     Such other, further, and additional relief as this Court may deem proper and may be just in law and in equity.

Respectfully submitted,

DURBIN, LARIMORE & BIALICK

By:    _____
David B. Donchin, OBA #10783
920 North Harvey
Oklahoma City, OK 73102-2610
Telephone: (405) 235-9584
Facsimile: (405) 235-0551
ddonchin@dlb.net
Attorney for Plaintiffs

**JURY TRIAL DEMANDED**

3944.0004\Orion Petition(22078913.2)

11

#22078913.2